Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CIMTECH INC.<br><br>Parte Apelante<br><br>v.<br><br>PATHEON PUERTO RICO INC. BY THERMO FISHER SCIENTIFIC Y OTROS<br><br>Parte Apelada | TA2026AP00503 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil Núm. AR2020CV01085 Consolidado con SJ2019CV12616<br><br>Sobre: Cobro de Dinero Ordinario, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de junio de 2026.

Comparece la parte apelante, CIMTECH, Inc. (CIMTECH o parte apelante), y solicita que revoquemos la *Sentencia Sumaria Parcial*[1]*,* emitida y notificada el 25 de junio de 2025, por el Tribunal de Primera Instancia, Sala de Arecibo (TPI). Mediante el referido dictamen, el TPI declaró con lugar la solicitud de sentencia sumaria presentada por la parte apelada, Patheon Puerto Rico, Inc. by Thermos Fisher Scientific (Patheon). En consecuencia, desestimó la causa de acción en cuanto a Patheon, con perjuicio, y le impuso a la parte apelante $8,000 en honorarios de abogado por temeridad.

El 15 de junio de 2026, Patheon presentó *Alegato de la Parte Apelada.*

Evaluados los alegatos de las partes, y a la luz del derecho aplicable, confirmamos la sentencia apelada.

**I. Trasfondo fáctico y procesal**

---

[1] Entrada Núm. 297 SUMAC TPI.

El 14 de septiembre de 2020, CIMTECH instó una demanda sobre cobro de dinero y daños y perjuicios (AR2020CV01085) en contra de Patheon y otros[2]. En síntesis, alegó que es una empresa dedicada al sellado de techos y venta de materiales para dichos fines. La apelante expresó que fue subcontratada por Essential Services for Government (ESG) para que le asistiera con el proyecto de sellado e impermeabilización del techo de la planta de Patheon ubicada en Manatí. Expuso que ESG dejó de efectuar los pagos desde el 9 de agosto de 2019, y que, a pesar de hacerle requerimientos de pago, dichas gestiones resultaron infructuosas. Por ende, CIMTECH acudió directamente a reclamar los pagos a Patheon, a quien le cursó cartas de cobro el 8 y 18 de octubre de 2019. Luego de esto, CIMTECH alegó que Patheon le impidió la entrada a la propiedad para recoger sus materiales cuyo valor estimado es de $15,000.00. En vista de lo anterior, CIMTECH reclamó que Patheon le adeudaba varias partidas[3]. También planteó que atender el proyecto de impermeabilización en Manatí le impidió hacer otros negocios, por lo que reclamó una cantidad de $250,000.00[4]. Luego, a solicitud de CIMTECH, el 17 de febrero de 2021, el TPI ordenó la consolidación del AR2020CV01085 con el SJ2019CV12616[5].

El 14 de diciembre de 2020, Patheon contestó la demanda[6]. Entre sus defensas afirmativas, señaló que no fue parte ni suscribió

---

[2] CIMTECH instó demanda contra Patheon Puerto Rico, Inc. by Thermo Fisher Scientirifi, Essential Government for Services, LLD, Edwin Pagán Bonilla por sí y su SLG con Jane Doe, Pedro Ortiza por sí y su SLG con Mary Doe y Aseguradora X.

[3] En específico reclamó "$55,251.91 movilización, $74,358.75 tornillos que le requirió FM o aseguradora de la farmacéutica, $164,262.69 por los trabajos rendidos para un total de $293,873.15." Véase, *Demanda*, Entrada Núm. 1 del expediente electrónico AR2020CV01085 en SUMAC TPI.

[4] El 27 de octubre de 2020, CIMTECH presentó *Demanda Enmendada* y el 16 de noviembre de 2020, el TPI emitió *Orden* mediante la cual aceptó la demanda enmendada. (Entradas 11 y 14 de SUMAC TPI).

[5] Entrada Núm. 36 SUMAC TPI. La demanda del caso SJ2019CV12616 fue instada por ESG en contra de CIMTECH por incumplimiento de contrato, cobro de dinero, difamación y daños y perjuicios.

[6] Entrada Núm. 17 SUMAC TPI.

contrato de servicios con CIMTECH. Puntualizó que, dado a que no le adeuda ninguna suma a ESG, contratista de la obra, consecuentemente CIMTECH no tiene causa de acción contra Patheon. Arguyó que, de existir una causa de acción contractual o extracontractual como consecuencia del contrato entre la apelante y ESG, esta última es quien debe asumir responsabilidad, si alguna.

Luego de varios trámites procesales, el 28 de marzo de 2025, Patheon presentó una *Solicitud de Sentencia Sumaria*[7]. A grandes rasgos, Patheon argumentó que CIMTECH no tenía causa de acción en su contra, y que todas las reclamaciones instadas por la apelante se podían dirimir por la vía sumaria.

Por su parte, CIMTECH presento su oposición el 8 de mayo de 2025[8]. Esgrimió que el TPI debía dirimir si la conducta de Patheon fue negligente al amparo del Artículo 1802 del Código Civil de 1930[9] pues Patheon no actuó de forma proactiva respecto a las reclamaciones de cobro de CIMTECH. También argumentó que el foro primario tenía que resolver la responsabilidad de ESG hacia CIMTECH por no haberle pagado su acreencia, de conformidad con lo establecido en el Art. 1489 del Código Civil de 1930[10]. Por último, arguyó que el TPI tenía que dilucidar la controversia respecto a cuánto realmente se le pagó a ESG. Por tanto, alegó que no procedía resolver el caso por la vía sumaria. Patheon presentó réplica a la

---

[7] Entrada Núm. 283 SUMAC TPI. En apoyo de su solicitud, Patheon acompañó los siguientes documentos: EX 1-DJ Jessica Calixto; EX 2-ESG Reconciliation (ESCO 18); EX 3-Carta CIMTEC 8 OCTUBRE 2019; EX 4-Deposición J. Quiñones 13.12.2024; EX 5-Deposición A. Cancel 18.11.2024; EX 6-Deposición E.Pagán 13.3.2023.

[8] Entrada Núm. 287 SUMAC TPI. En apoyo de su postura, la apelante acompañó los siguientes documentos: Carta Lic. Duran de 23 oct 2023; Extracto de Continuación Deposición Sr. Pagan; Extracto Deposición Sr. Pagan; Declaración Jurada Ing. Miguel Rosa; Extracto Deposición Sr. Quiñones; Cheque Devuelto po[r] Falta de Fondos y Estado de Cuenta; Carta Lic. Duran 16 oct 2019; Carta Lic. Duran 23 oct 2019; E-mail Lic. Duran a Abogado Codemandado y respuesta del 23 de junio 2020; Carta de Sr. Quiñones Patheon (USA) del 22 sept 2020; Extracto Deposición Sra. Lydia Crespo; Extracto Deposición Jessica Calixto; Extracto Deposición Alekxei Cancel; Lista de Pagos a ESG preparados por Codemandado Patheon y Orden de Compra Num MANEP168323 entre ESG y CIMTECH.

[9] 31 LPRA § 5141.

[10] 31 LPRA § 4130.

oposición de CIMTECH[11]. El foro apelado la permitió y emitió orden el 17 de junio de 2025, y el asunto quedó sometido[12].

El 25 de junio de 2025, el TPI emitió la *Sentencia Sumaria Parcial* apelada. En esta, el TPI enumeró las siguientes determinaciones de hechos:

1. Patheon es una corporación autorizada a hacer negocios en Puerto Rico, con capacidad para demandar, y ser demandada, ubicada en State Road #670 KM 2.7 Manatí, Puerto Rico. Véase, Querella Enmendada ¶2; Contestación a la Querella ¶2. Hecho admitido en el escrito de Oposición.

2. Durante el mes de septiembre de 2018, Patheon contrató a ESG para que impermeabilizara y sellara 60,000 pies cuadrados de uno de los techos de sus facilidades que se vieron afectados por el paso del Huracán María en septiembre de 2017. Véase, Exhibit 5, Deposición del Sr. Alekxei Cancel Vargas, tomada el 18 de noviembre de 2024, a la pág. 17; Véase, Exhibit 6, Deposición del Sr. Edwin Pagán Bonilla, tomada el 13 de marzo de 2023, a las págs. 359-360. Hecho admitido en el escrito de Oposición.

[...]

6. Cada vez que ESG facturaba conforme al por ciento de trabajo realizado del proyecto y una vez se cumplieran con los requisitos de certificación de la obra y la aprobación de la factura, el Departamento de Finanzas pagaba la misma contra la orden de compra y/o asignación presupuestaria. Véase, Exhibit 8, Deposición de la Sra. Jessica Calixto Martínez, tomada el 20 de noviembre de 2024, a las págs. 9-14; Véase, Exhibit 6, Deposición del Sr. Edwin Pagán Bonilla, tomada el 13 de marzo de 2023, a las págs. 362-363, 392; Véase, Exhibit 7, Deposición del Sr. Edwin Pagán Bonilla, tomada el 11 de noviembre de 2024, a las págs. 25, 35-37.

7. El 10 de septiembre de 2018, Patheon generó la orden de compra MANEP 119216, mediante la cual asignó $1,285,000.00 al proyecto de impermeabilización que llevaría a cabo ESG. Véase, Exhibit 8, Deposición de la Sra. Jessica Calixto Martínez, tomada el 20 de noviembre de 2024, p. 9-14; Exhibit 9, Orden de Compra MANEP 119216. Hecho admitido en el escrito de Oposición.

8. La Orden de Compra MANEP119216 no era una factura de ESG a Patheon. Véase, Exhibit 8, Deposición de la Sra. Jessica Calixto Martínez, tomada el 20 de noviembre de 2024, a las págs. 9-14; Véase, Exhibit 7, Deposición del Sr. Edwin Pagán Bonilla, tomada el 11

---

[11] Entrada 293 SUMAC TPI.

[12] El 19 de junio de 2025, CIMTECH presentó escrito en dúplica, titulado *Breve Moción Aclaratoria Relacionada con Réplica del Codemandado a Patheon*, pero dicho escrito no fue autorizado por el foro *a quo*.

de noviembre de 2024, a la pág. 38. Hecho admitido en el escrito de Oposición.

9. Conforme a los términos pactados y los procesos contables de Patheon, ESG tenía que facturarle a Patheon cada vez que completara los 15,000 pies cuadrados. Exhibit 5, Deposición del Sr. Alekxei Cancel Vargas, tomada el 18 de noviembre de 2024, a las págs. 26-27; Exhibit 6, Deposición del Sr. Edwin Pagán Bonilla, tomada el 13 de marzo de 2023, a las págs. 359-360. Hecho admitido en el escrito de Oposición.

10. No era hasta que ESG le facturara a Patheon que existía una deuda entre ESG y Patheon. Véase, Exhibit 8, Deposición de la Sra. Jessica Calixto Martínez, tomada el 20 de noviembre de 2024, a las págs. 9-14; Véase, Exhibit 7, Deposición del Sr. Edwin Pagán Bonilla, tomada el 11 de noviembre de 2024, a las págs. 36-37.

11. No existe otro mecanismo de pago entre ESG y Patheon. Véase, Exhibit 7, Deposición del Sr. Edwin Pagán Bonilla, tomada el 11 de noviembre de 2024, a la pág. 39. Hecho admitido en el escrito de Oposición.

12. El 2 de julio de 2019, ESG envió la primera factura a Patheon, factura número ESG- 4578670. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos.

13. La factura número ESG-4578670 fue procesada y pagada por Patheon el 23 de agosto de 2019. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos

14. El 19 de julio de 2019, ESG envió una segunda factura, factura número 20191500. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos.

15. La factura número 20191500 fue procesada y pagada el 8 de agosto de 2019. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos.

16. Ambas facturas fueron giradas contra la orden de compra MANEP119216. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos.

17. ESG no presentó ninguna otra factura a Patheon hasta el 1 de diciembre de 2019. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos.

18. Patheon cumplió con todos los términos de pago hasta que se completó la obra. Véase, Exhibit 6, Deposición del Sr. Edwin Pagán Bonilla, tomada el 13 de marzo de 2023, a las págs. 331-332, 338.

19. El 8 de octubre de 2019, Cimtech, a través de la Lcda. Alma Durán, envió una carta a Patheon mediante la cual le informó que ESG le debía unas facturas por unos trabajos de impermeabilización para los cuales ESG los había subcontratado. Véase, Exhibit 3, Carta de la Lcda. Alma Duran a Patheon. Hecho admitido en el escrito de Oposición.

20. La comunicación enviada por Cimtech no expone la cantidad reclamada. Véase, Exhibit 3, Carta de la Lcda. Alma Duran a Patheon.

21. La comunicación se limita a decir que Patheon, como dueño de la obra, tenía que pagarle a Cimtech, como materialista, las facturas de Cimtech fechadas 9 de agosto de 2019, 22 de agosto de 2019 y 18 de septiembre de 2019 que ESG, como contratista, no le había pagado. Véase, Exhibit 3, Carta de la Lcda. Alma Duran a Patheon.

22. Aunque la carta no lo expone, el Sr. Jerry Quiñones Rivera admitió en su deposición que las facturas que Cimtech sometió a Patheon reflejaban que ESG había hecho pagos parciales a Cimtech, pero que dichos pagos no fueron informados a Patheon. Véase, Exhibit 4, Deposición del Sr. Jerry Quiñones Rivera, tomada el 13 de diciembre de 2023, a las págs. 51-60.

23. El 18 de octubre de 2019, Cimtech envió otra carta mediante la cual reiteró la reclamación de pago hecha el 8 de octubre de 2019. Véase, Exhibit 10, Carta de la Lcda. Alma Duran a Patheon fechada 18 de octubre de 2019. Hecho admitido en el escrito de Oposición.

24. En ese momento, Patheon desconocía quién era Cimtech y/o que dicha entidad era un subcontratista de ESG. Véase, Exhibit 5, Deposición del Sr. Alekxei Cancel Vargas, tomada el 18 de noviembre de 2024, a las págs. 27-29; Exhibit 11, Deposición de la Sra. Lydia Crespo Minguela, tomada el 21 de noviembre de 2024, a las págs. 9-10.

25. A las fechas 8 y 18 de octubre de 2019, Patheon no tenía ninguna factura de parte de ESG pendiente de pago. Véase, Exhibit 1, Declaración Jurada de Jessica Calixto Martínez y Exhibit 2, Reconciliación de Pagos.

26. Patheon, por su parte, le informó a ESG sobre la carta recibida por parte de Cimtech. Véase, Exhibit 11, Deposición de la Sra. Lydia Crespo Minguela, tomada el 21 de noviembre de 2024, a la pág. 13. Hecho admitido en el escrito de Oposición.

27. A consecuencia de ello, ESG le informó a Patheon que ellos no le adeudaban dinero alguno a Cimtech y que, por el contrario, era Cimtech quien les debía dineros a ellos por unos pagos que se la habían realizado en exceso. ESG le suplió a Patheon copia de todos los cheques que le habían pagado a Cimtech hasta el momento. Véase, Exhibit 11, Deposición de la Sra. Lydia Crespo Minguela, tomada el 21 de noviembre de 2024, a la pág. 13; Exhibit 12, Carta del Lcdo. Amexis Bonilla, representante legal de ESG, fechada 21 de octubre de 2019.

[...]

30. Patheon desconocía que habían empleados de Cimtech trabajando para ESG. Véase, Exhibit 11, Deposición de la Sra. Lydia Crespo Minguela, tomada el 21 de noviembre de 2024, a las págs. 9-10.

31. ESG nunca le informó a Patheon que ellos habían subcontratado a Cimtech. Véase, Exhibit 5, Deposición de la Alekxei Cancel Vargas, tomada el 18 de noviembre de 2024, a las págs. 27-31, 49-51;

Véase, Exhibit 11, Deposición de la Sra. Lydia Crespo Minguela, tomada el 21 de noviembre de 2024, a las págs. 9-10.

32. Para los efectos de Patheon, todos los empleados que trabajaron el proyecto eran de ESG. Por tanto, Patheon no tenía ningún conocimiento relacionado a equipos y materiales de Cimtech que alegadamente utilizaba ESG y que permanecían en la planta. Véase, Exhibit 11, Deposición de la Sra. Lydia Crespo Minguela, tomada el 21 de noviembre de 2024, a la pág. 19.

33. Como parte del proyecto, Patheon le asignó un área en la planta para que ESG colocara un contenedor para que guardara sus materiales. ESG llevó un contenedor y allí guardaban sus materiales. Véase, Exhibit 5, Deposición de la Alekxei Cancel Vargas, tomada el 18 de noviembre de 2024, a las págs. 49-51; Exhibit 13 – Acuse de recibo de entrega de materiales a ESG.

34. Dicho contenedor fue recogido por ESG el 4 de abril de 2024. Patheon desconocía el contenido el contenedor, ya que estaba bajo llave. Véase, Exhibit 13 – Acuse de recibo de entrega de materiales a ESG.

35. ESG era quien le informaba al Departamento de Seguridad de Patheon el personal que estaba autorizado por ellos a entrar a la planta y trabajar en el proyecto. Véase, Exhibit 5, Deposición de la Alekxei Cancel Vargas, tomada el 18 de noviembre de 2024, a las págs. 49-51; Véase, Exhibit 7, Deposición del Sr. Edwin Pagán Bonilla, tomada el 11 de noviembre de 2024, a la pág. 22.

36. El Sr. Jerry Quiñones Rivera admitió que él nunca le dijo a Patheon que había materiales en la planta que eran de Cimtech y no de ESG. Véase, Exhibit 4, Deposición del Sr. Jerry Quiñones Rivera, tomada el 13 de diciembre de 2023, a la pág. 62.

37. El Sr. Jerry Quiñones Rivera admitió que Cimtech nunca fue a buscar materiales a Patheon. Véase, Exhibit 4, Deposición del Sr. Jerry Quiñones Rivera, tomada el 13 de diciembre de 2023, a la pág. 70.

38. El Sr. Jerry Quiñones admitió que nunca ha habido una actuación de Patheon en contra de Cimtech. Véase, Exhibit 4, Deposición del Sr. Jerry Quiñones Rivera, tomada el 13 de diciembre de 2023, a las págs. 90, 106. [13]

En resumen, el foro de instancia resolvió que, a la luz de la prueba presentada, Patheon logró demostrar que no existían hechos materiales en controversia que impidieran la adjudicación por la vía sumaria de la causa de acción instada en su contra. De este modo, concluyó que CIMTECH no logró rebatir los hechos propuestos por la apelada, así como tampoco era de aplicación el Artículo 1489 del

---

[13] Negritas suprimidas.

Código Civil, *supra*. Lo anterior, porque, aunque CIMTECH anejó a las cartas de cobro unas facturas en las que reclamaba el cobro de la totalidad de las sumas alegadas, la prueba presentada por Patheon demostró que estaba al día con el pago de las facturas presentadas por ESG. En ese sentido, el foro apelado puntualizó que, al momento de cursarse las referidas cartas, Patheon había pagado cerca de $720,968.58 a ESG. En vista de lo anterior, el TPI concluyó que CIMTECH no podía ir contra Patheon a cobrarle, pues este no adeudaba suma alguna a ESG, por lo cual no aplicaba lo establecido en el citado artículo.

Por último, el TPI concluyó que tampoco procedía la reclamación bajo el Artículo 1802 del Código Civil, *supra*, pues no surgía evidencia de acto alguno cometido por Patheon que le haya ocasionado un daño irreparable a CIMTECH, así como tampoco había evidencia alguna de los alegados daños sufridos. Por lo antes expuesto, el foro recurrido declaró Con Lugar la solicitud de sentencia sumaria parcial de Patheon, y desestimó la reclamación instada en su contra en el caso AR2002CV01085, con perjuicio.

Asimismo, el TPI resolvió que CIMTECH litigó la causa de acción contra Patheon de forma temeraria. Lo anterior, pues determinó que, a la luz del descubrimiento de prueba realizado por las partes, CIMTECH tenía pleno conocimiento de que la reclamación en contra de Patheon bajo el Artículo 1489 del Código Civil, *supra*, era improcedente, y que, a pesar de ello, continuó el litigio contra Patheon. En consecuencia, le impuso $8,000.00 en honorarios por temeridad.

Insatisfecho con el dictamen, CIMTECH solicitó reconsideración el 8 de julio de 2025[14]. Mientras, Pantheon presentó su oposición el 5 de agosto de 2025[15] y ese mismo día la parte

---

[14] Entrada Núm. 300 SUMAC TPI.
[15] Entrada 306.

apelante replicó[16]. El 20 de agosto de 2025, el TPI emitió una orden en la que autorizó el escrito de réplica de la parte apelante y dio por sometida la reconsideración[17]. Finalmente, el 27 de abril de 2026, el TPI denegó la reconsideración[18].

En desacuerdo, CIMTECH acude ante nos y formula los siguientes señalamientos de error:

PRIMER ERROR:

Erró el Tribunal de Primera Instancia al dictar sentencia sumaria en el presente caso, a pesar de que el derecho procesal aplicable a las mociones de sentencia sumaria no apoyaba dicha determinación pues el apelado no presentó prueba admisible suficiente para apoyar su petición y en el caso existían controversias sobre hechos medulares y asuntos de credibilidad que hacían impropio que el mismo se resolviera por dicha vía.

SEGUNDO ERROR:

Erró el Tribunal de Primera Instancia al dictar sentencia sumaria en el presente caso, a pesar de que el derecho sustantivo aplicable a las causas de acción ejercitadas por el apelante no favorecía a los apelados y por el contrario favorecía la reclamación compareciente.

TERCER ERROR:

Erró el Tribunal de Primera Instancia al imponer honorarios por temeridad al apelante sin establecer en forma específica cu[á]les fueron los actos que realizó éste que justificaban dicha sanción y basar dicha determinación solo en el hecho de que la reclamación al amparo del artículo 1489 alegadamente no procedía.

Por su parte, el 15 de junio de 2026, Patheon presentó su alegato en oposición al recurso.

Con el beneficio de la comparecencia de las partes, resolvemos.

## II. Derecho Aplicable

## A. La Sentencia Sumaria

El Tribunal Supremo de Puerto Rico ha definido la Moción de Sentencia Sumaria como "un mecanismo procesal que nuestro ordenamiento jurídico provee para la solución rápida, justa y

---

[16] Entrada Núm. 307 SUMAC TPI.
[17] Vale señalar que el 24 de abril de 2026, las partes presentaron moción conjunta solicitando se resolviera la solicitud de reconsideración.
[18] Entrada Núm. 317 SUMAC TPI.

económica de los pleitos en los cuales es innecesario celebrar un juicio plenario".[19] La Regla 36 de Procedimiento Civil regula esta moción, así como sus requisitos de forma y su oposición.[20] Procede su utilización cuando no existen hechos materiales en controversia, de modo que solo resta aplicar el derecho correspondiente.[21]

Es decir, solo procede dictar sentencia sumaria cuando surge de manera diáfana que la parte promovida por el recurso no puede prevalecer, dado que el tribunal cuenta con la verdad de todos los hechos necesarios para disponer de la controversia.[22] Nuestro más alto Foro ha establecido que un hecho material es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[23]

No obstante, el tribunal no podrá dictar sentencia sumaria cuando: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los documentos que acompañan la moción una controversia real sobre algún hecho material y esencial; o 4) no procede dictar sentencia sumaria como cuestión de derecho.[24] En ese sentido, la parte que promueve este mecanismo procesal deberá incluir en su moción: 1) una exposición breve de las alegaciones de las partes; 2) los asuntos litigiosos en controversia; 3) la causa de acción sobre la cual se solicita el remedio; 4) una relación concisa y organizada en párrafos enumerados de todos los hechos pertinentes y esenciales sobre los cuales no hay controversia sustancial, con referencia a los párrafos o páginas de las declaraciones juradas o

---

[19] *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015).

[20] *CSM v. ELA,* 216 DPR __ (2025); 2025 TSPR 78; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024).

[21] *CSM v. ELA, supra*; *Cruz, López v. Casa Bella y otros, supra*, pág. 993; *Oriental Bank v. Caballero García, supra*, pág. 678; *Meléndez González et al. v. M. Cuebas, supra*, pág. 109.

[22] *Oriental Bank v. Caballero García, supra*, pág. 679.

[23] *Cruz, López v. Casa Bella y otros, supra*; *Oriental Bank v. Caballero García, supra*, pág. 679; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[24] *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

prueba admisible en evidencia que lo sostienen; 5) el derecho aplicable; y 6) el remedio que solicita.[25]

En consonancia, la parte promovida deberá enumerar los hechos materiales controvertidos y aquellos sobre los cuales no hay controversia.[26] Además, deberá señalar los párrafos o páginas de la prueba que impugne cada hecho.[27] La parte que se opone a una moción de sentencia sumaria, "no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación".[28] Debe refutar la moción de sentencia sumaria de una forma tan detallada y específica, así como lo hizo el promovente en su solicitud.[29] En adición, el Tribunal Supremo ha resuelto que:

> la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión.[30]

Una vez sometida la moción de sentencia sumaria y su oposición, el tribunal deberá analizar los documentos que acompañan la moción de sentencia sumaria, los documentos que acompañan la oposición a tal moción, y aquellos que obren en el expediente.[31] Asimismo, determinará si la parte promovida controvirtió algún hecho material o si hay alegaciones que no han sido refutadas por la prueba.[32]

Ahora bien, este Foro revisor se encuentra en la misma posición que el TPI al momento de revisar una solicitud de sentencia sumaria.[33] Es por ello que, al examinar la determinación del foro recurrido, el Tribunal de Apelaciones está limitado de varias formas,

---

[25] Regla 36.3(a) de Procedimiento Civil de 2009 (32 LPRA Ap. V, R. 36.3(a)); *Oriental Bank v. Caballero García, supra*, pág. 679.
[26] Regla 36.3(b) de Procedimiento Civil de 2009 (32 LPRA Ap. V, R. 36.3(b)); *Oriental Bank v. Caballero García, supra*, pág. 680.
[27] *Íd.*
[28] *Oriental Bank v. Caballero García, supra*, pág. 680.
[29] *Íd.*
[30] *León Torres v. Rivera Lebrón*, 204 DPR 20, 54 (2020).
[31] *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010).
[32] *Íd.*
[33] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

a saber: 1) sólo puede considerar la prueba presentada ante el foro de instancia; y 2) solo puede determinar si existe o no alguna controversia de hechos materiales, y si el derecho fue aplicado correctamente.[34] Vale destacar que este Foro intermedio no puede adjudicar hechos materiales en disputa, toda vez que esa tarea le corresponde al TPI.[35]

En armonía con lo antes expuesto, el Tribunal Supremo ha puntualizado los pasos a seguir por el Tribunal de Apelaciones cuando le corresponda evaluar una sentencia sumaria:

> *Primero*, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, [*supra*], a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> *Segundo*, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, [*supra*].
>
> *Tercero*, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.* Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> *Cuarto*, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[36]

---

[34] *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004).
[35] *Íd.*, pág. 335.
[36] (Bastardillas en el original). *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

**B. El Artículo 1489 del Código Civil de 1930, 31 LPRA sec. 4130**

El Artículo 1489 del Código Civil dispone que "[l]os que ponen su trabajo y materiales en una obra ajustada alzadamente *por el contratista* no tienen acción contra el dueño de ella sino *hasta la cantidad que este adeude a aquél cuando se hace la reclamación.*"[37]

Dicho articulado proporciona un remedio estatutario a los terceros ajenos al contrato de obra, por consideraciones de orden público y de equidad, para que puedan recobrar el valor del trabajo y de los materiales que invirtieron o aportaron a ella[38]. Su propósito es evitar "que [el] dueño o [contratista] o ambos, hasta por fraudulenta confabulación, se enriquezcan dañosamente con el esfuerzo o la aportación impagada de [los obreros] materialistas."[39] Así, los que han convenido con el contratista para el suministro de materiales y mano de obra, pueden llevar una acción directa contra el dueño del proyecto por la deuda que aquél deje al descubierto por esos conceptos. De esta manera, los obreros, subcontratistas y materialistas pueden hacer efectivo su crédito contra el dueño de la obra, aun cuando no intervinieron en el contrato original ni exista una relación contractual directa con él. El remedio que brinda el Artículo 1489 constituye, pues, una excepción al principio de la relatividad de los contratos, que establece que los contratos tienen efecto únicamente entre los otorgantes y sus causahabientes.[40]

La doctrina reconoce que el dueño de la obra se convierte en deudor de los materialistas y obreros desde el mismo momento en que se realiza la reclamación, bien sea judicial o

---

[37] Énfasis nuestro.

[38] *Puerto Rico Wire Prod.v. C. Crespo Asoc.,* 175 DPR 139 (2008).

[39] *Goss, Inc. v. Dycrex Const. & Co., S.E.,* 141 DPR 342, 357 (1996); *C. Armstrong e Hijos v. Díaz,* 95 DPR 819, 824-825 (1968); Eduardo Vázquez Bote, IX-I *Tratado de Derecho Privado Puertorriqueño* 365 (Equity 1992).

[40] Artículo 1209 del Código Civil de Puerto Rico, 31 LPRA sec. 3374; *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 DPR 26 (1979); *Junco Steel Corp. v. C.E. Design Dev.,* 148 DPR 272, 277 (1999).

extrajudicialmente.[41] Como resultado, el dueño de la obra deja de ser el deudor del contratista general hasta el punto que los acreedores particulares del segundo no podrán concurrir con los obreros y materialistas en la suma debida por el primero. *Íd.* De esta manera, se reconoce un derecho preferente a favor de estos terceros, lo que constituye una "verdadera medida de ejecución y medio de pago".[42]

De otra parte, esta acción solo admite dos limitaciones: primero, **el reclamo debe restringirse a la cantidad que le adeude el dueño de la obra al contratista**, en virtud del contrato de ejecución de obra; y, segundo, el suplidor **no adquiere ante el dueño de la obra más derechos de los que tenía el contratista**. Es decir, "para que el dueño de la obra no se vea obligado a pagar dos veces, esto es, al contratista y también a los obreros y suministrantes, el Artículo 1489 especifica que la acción procede solamente hasta la cantidad que el dueño adeude al contratista cuando se hace la reclamación."[43] Es por ello que, "la cantidad adeudada por el dueño de la obra está sujeta a liquidación por razón de reajustes o posibles reclamaciones recíprocas que surgen en relación con la obra contratada entre el contratista y el dueño de esta. (Citas omitidas)."[44] La jurisprudencia también ha aclarado que la acción concedida por el citado Artículo 1489 no supone una modificación de la situación sustantiva previa que rigiera las relaciones entre el dueño de la obra y el contratista.[45]

A la luz de estas limitaciones, es indispensable que, al momento en que el obrero o materialista haga su reclamo, exista una deuda líquida, exigible y vigente a favor del contratista general,

---

[41] *Goss, Inc. v. Dycrex, & Co., S.E.,* supra; *Amer. Surety Co. v. Tribunal Superior,* 97 DPR 452, 455-456 (1969).
[42] *R. Román & Cía. v. J. Negrón Crespo, Inc.*, 109 DPR 26, 31 (1979).
[43] (Citas omitidas). C. *Armstrong e Hijos v. Díaz,* supra; *Junco Steel Corp. v. C.E. Design Dev.*, supra.
[44] *Junco Steel Corp. v. C.E. Design Development*, 148 DPR 272 (1999).
[45] *R. Román & Cía. v. J. Negrón Crespo, Inc.,* supra, a la pág. 34.

sobre la totalidad o parte del precio acordado para realizar la obra. De lo contrario, la acción es improcedente, debido a que una vez el dueño de la obra emite el pago final, los trabajadores y materialistas pierden la garantía del Artículo 1489 del Código Civil.[46]

## C. La responsabilidad civil extracontractual (Artículo 1802 Código Civil de 1930)

El caso que nos ocupa se rige por las disposiciones del Código Civil de 1930, ya derogado. La responsabilidad civil extracontractual está recogida en el Artículo 1802 del Código Civil de 1930[47]. Dispone dicho artículo que, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".[48] A esos efectos, para que prospere una causa de acción en virtud del Art. 1802 del Código Civil de 1930, *supra*, es necesario que concurran tres elementos, a saber: (1) un acto u omisión culposo o negligente; (2) una relación causal entre el acto u omisión culposo o negligente y el daño que se reclama y (3) la existencia de un daño que sea real y no hipotético.[49]

La responsabilidad por negligencia se caracteriza por la concurrencia de los siguientes elementos: (a) la existencia de una obligación o, al menos, de un deber general, reconocido por el Derecho, que exige que los sujetos ajusten sus actos a un determinado tipo de conducta para la protección de los demás contra riesgos irrazonables y (b) que el agente del daño haya obrado sin ajustarse a semejante tipo de conducta.[50]

Según nuestro Tribunal Supremo, la palabra daño significa "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder

---

[46] *Master Concrete Corp. v. Fraya, S.E.,* 152 DPR 616, 636 (2000).

[47] 31 LPRA sec. 5141.

[48] El Art. 1802 del Código Civil de 1930 es equivalente al Art. 1536 del Código Civil de 2020; El Art. 9 del Código Civil de 2020 establece que dicho Código no tiene efecto retroactivo.

[49] *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

[50] J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. II, Vol. III, pág. 88.

otra"[51]. De otro lado, la culpa o negligencia consiste en no prever o anticipar las consecuencias racionales de un acto u omisión de un acto, que una persona prudente habría de prever en circunstancias similares[52]. En este sentido, la figura de previsibilidad es uno de los elementos esenciales de la responsabilidad por culpa o negligencia[53]. Ahora bien, el referido deber de anticipar y evitar la ocurrencia de un daño, cuya probabilidad es razonablemente previsible, no se extiende a todo riesgo posible[54]. En específico, lo importante es que se pueda prever en forma general, las consecuencias de determinada acción o inacción[55].

### D.     Honorarios

De otra parte, tanto la imposición de honorarios de abogado, como el interés por temeridad responden y tienen como propósito disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria que compensen los perjuicios económicos y las molestias sufridas por la otra parte[56]. Según nuestro Más Alto Foro, la temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables"[57]. Por ello, la temeridad es una conducta que afecta el buen funcionamiento de los tribunales y la administración de la justicia[58].

Sin embargo, la determinación de si una parte obró con temeridad descansa en la sana discreción del juez sentenciador[59]. A esos efectos, una vez se determina la existencia de temeridad, el tribunal deberá tomar en cuenta una serie de factores para poder

---

[51] *López v. Porrata Doria*, 169 DPR 135, 151 (2006).
[52] *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997).
[53] *SLG Colón-Rivas v. ELA*, 196 DPR 855, 864 (2016).
[54] *Montalvo v. Cruz*, 144 DPR 748, 756 (1998).
[55] *Montalvo v. Cruz, supra*.
[56] *Montañez v. U.P.R.*, 156 DPR 395, 425 (2002).
[57] *Marrero Rosado v. Marrero Rosado*, 178 D.P.R. 476, 504 (2010).
[58] *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016).
[59] *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011).

calcular la cantidad que concederá, a saber: "(1) el grado de temeridad; (2) el trabajo realizado; (3) la duración y naturaleza del litigio; (4) la cuantía involucrada; y (5) el nivel profesional de los abogados[60]. Dicho lo anterior, a nivel apelativo, la determinación de imponer honorarios de abogado no será revisada a menos que el tribunal *a quo* se haya excedido en su discreción[61].

En cuanto a los honorarios de abogado, la Regla 44.1(d) de Procedimiento Civil de Puerto Rico[62], establece que estos procederán cuando el tribunal sentenciador determina que una parte o abogado ha actuado con temeridad o frivolidad. En específico, la referida disposición establece lo siguiente:

> (d) Honorarios de abogado. En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

## III. Aplicación del derecho a los hechos

Antes de proceder a discutir los errores señalados por la parte apelante, colegimos que la *Solicitud de Sentencia Sumaria* y la *Moción para Oponernos a Solicitud de Sentencia Sumaria* cumplen con los requisitos de forma prescritos por la Regla 36.3 de Procedimiento Civil.

Luego de un análisis sosegado de la prueba presentada por las partes de epígrafe para sostener los hechos incontrovertidos y los hechos impugnados en sus respectivas mociones, coincidimos con el TPI al determinar que no existen controversias de hechos materiales que impidan disponer del caso de manera sumaria.

Ahora, nos atañe dirimir si el foro apelado aplicó correctamente el Derecho a la controversia de este caso.

---

[60] *C.O.P.R. v. S.P.U. v. S.P.U.*, supra.
[61] *CNA Casualty of P.R. v. Torres Díaz*, 141 DPR 27, 44 (1996).
[62] 32 LPRA Ap. V, R. 44.1.

Por estar estrechamente relacionados, discutiremos conjuntamente el primer y segundo señalamiento de error. En esencia, CIMTECH alega que el TPI incidió al desestimar la reclamación en contra de Patheon. Basa su argumento, en que dicha causa de acción no podía resolverse por la vía sumaria, pues existían hechos sustanciales en controversia, en especial en torno a la aplicación del Artículo 1489, *supra*. No le asiste la razón.

Conforme resolvió el foro *a quo,* de la prueba presentada, se desprende que, entre CIMTECH y Patheon no existía relación contractual alguna que obligara a la parte apelada a pagarle a CIMTECH las cantidades reclamadas. En efecto, Patheon no tenía conocimiento de que ESG, contratista de la obra, había subcontratado a CIMTECH para los trabajos de impermeabilización. En ese sentido, la prueba demostró que, al momento en que CIMTECH hizo su reclamo a Patheon mediante cartas de cobro, no existía una deuda líquida, exigible y vigente a favor de ESG, pues Patheon no adeudaba suma alguna a ESG[63]. Habida cuenta de lo anterior, y conforme preceptuado en el Artículo 1489, *supra,* "[l]os que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista *no* tienen causa de acción contra el dueño de la obra, sino hasta la cantidad que este adeude a aquel *cuando se hace la reclamación*"[64]. Por consiguiente, al no cumplirse con los requisitos del Artículo 1489, *supra,* CIMTECH no podía acudir en contra de Patheon a reclamarle las alegadas cantidades no pagadas por ESG, al amparo del citado artículo.

En cuanto al tercer señalamiento de error, CIMTECH, arguye que el foro primario erró al imponerles honorarios por temeridad,

---

[63] De hecho, la fecha de pago de la última factura pagada por Patheon a ESG fue el 8 de agosto de 2019, y no se cursaron facturas adicionales a Patheon; por lo cual, a la fecha de las cartas de cobro que CIMTECH envió a Patheon, este no adeudaba balance alguno a ESG. Véase, determinación de hecho número 14 y15.
[64] 31 LPRA § 4130. Énfasis nuestro.

pues entiende que el TPI no estableció actos específicos que justificaran dicha sanción. Veamos.

En el dictamen apelado, el foro primario expresó que la prueba presentada, así como los hechos establecidos demostraron que CIMTECH tenía conocimiento pleno de que la causa de acción contra Patheon como dueño de la obra era improcedente, y aun así continuó el litigio contra dicha parte. Sobre el particular, y conforme surge de la prueba presentada, la última factura que ESG le cursó a Patheon el 19 de julio de 2029, fue pagada por Patheon el 8 de agosto de 2019[65], y desde esa fecha Patheon no adeudaba suma alguna a ESG. Aun así, CIMTECH realizó gestiones de cobro a Patheon mediante las cartas cursadas el 8 y 18 de octubre de 2019, sin exponer cuantía especifica de la alegada deuda. Las cartas cursadas también exponían que ESG no le había pagado y, sin embargo, de las facturas sometidas a Patheon surge que ESG le había hechos pagos parciales[66]. Vale destacar que para la fecha en que se cursaron dichas cartas, *Patheon estaba al día con los pagos de las facturas cursadas por ESG*. CIMTECH contumazmente instó causa de acción contra Patheon, ocasionándole las molestias y gastos que conllevó a la apelada tener que defenderse del litigio desde el 14 de septiembre de 2020 al presente- esto es, a casi seis (6) años de iniciado el pleito.

Así pues, luego de un análisis ponderado del caso, concluimos que el TPI actuó correctamente al imponer a CIMTECH honorarios por temeridad. Por ello, en ausencia de abuso de discreción, por lo que la determinación del foro apelado en ese asunto merece nuestra deferencia[67]. En conclusión, no se cometieron los errores señalados, por lo que procede confirmar el dictamen apelado.

---

[65] Véase, determinación de hecho número 14 y 15.

[66] Véase, determinaciones de hecho número 19 a la 22.

[67] Dicho lo anterior, a nivel apelativo, la determinación de imponer honorarios de abogado no será revisada a menos que el tribunal *a quo* se haya excedido en su discreción. *CNA Casualty of P.R. v. Torres Díaz*, 141 DPR 27, 44 (1996).

**IV. Parte dispositiva**

Por los fundamentos que anteceden, se confirma la sentencia sumaria parcial apelada.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones